UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

CR. NO. 26-86 (NEB/JFD)

---

UNITED STATES OF AMERICA,

Plaintiff,

vs.

CHRISTOPHER JOSIAH OSTROUSHKO (1),

PAIGE MARIE OSTROUSHKO (2),

DEYANNA MARIE OSTROUSHKO (3),

Defendants.

**MOTION FOR DISCLOSURE OF GRAND JURY MATERIALS**

---

Defendants Christopher, Paige, and Deyanna Ostroushko respectfully move the Court under Federal Rule of Criminal Procedure 6(e)(3)(E)(ii) to order the release of grand jury materials. The indictment raises serious concerns about how the grand jury was led to indict on Count 1 when the indictment itself provides no facts that would support the charge. Accordingly, the Ostroushkos respectfully ask this Court to grant them access to a narrow subset of grand jury material—specifically, (a) a transcript of direct interactions between the prosecution and the grand jury (such as introductory remarks, legal advice, instruction, or colloquy); (b) the testimony of any federal law enforcement officer(s) who appeared in the grand jury; and (c) any exhibits presented to the grand jury. At a minimum, these materials should be provided for the Court's review *in camera*.

Under most circumstances, the secrecy surrounding grand jury proceedings is jealously guarded. *See* Fed.R.Crim.P. 6(e)(2). But that secrecy is not absolute, and "in some situations, justice may ***demand*** that discrete portions of grand jury proceedings be made available." *In re Grand Jury Proc. Relative to Perl*, 838 F.2d 304, 306 (8th Cir. 1988) (emphasis added). The enumerated exceptions to the rule of secrecy include disclosures "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). To obtain grand jury materials, the party seeking disclosure must make a strong showing of particularized need. *See United States v. Sells Eng'g, Inc.,* 463 U.S. 418, 434 (1983); *United States v. McDougal*, 559 F.3d 837, 841 (8th Cir. 2009) (citing standard for "particularized need"); *United States v. Broyles*, 37 F.3d 1314, 1318 (8th Cir. 1994); *Perl*, 838 F.2d at 306.

Particularized need is defined under *Douglas Oil Co. of California v. Petrol Stops Northwest*., 441 U.S. 211, 222 (1979), which sets out a three-part balancing test. The more manifest and fundamental the injustice that is at risk, the more important disclosure is; the less critical continued secrecy is, the less objectionable disclosure is. Under the three-part test, a defendant establishes particularized need by showing: (1) that disclosure of the materials will avoid a possible injustice; (2) that the need for disclosure is greater than the need for continued secrecy; and (3) that the request is narrowly tailored to fit the need. *See United States v. Kocher,* 978 F.2d 1264 (unpub.) (8th Cir. 1992) ("To compel disclosure of a grand jury transcript

[the defendant] had to show the transcript was needed to avoid a possible injustice, the need for disclosure was greater than the need for continued secrecy, and his request was structured to cover only material needed.") (consolidating *Douglas* test as used in *Perl*, 838 F.2d at 307.); *see also United States v. Elmi*, No. 20-CR-262 (ADM/ECW), 2021 WL 2390247, at *2 (D. Minn. June 11, 2021) (citing same standard).

Count 1 of the indictment charges Christopher and Paige Ostroushko with Interference with Federally Protected Activity under 18 U.S.C. § 245(b)(1)(B). According to the one-sentence accusation in the indictment, which merely parrots the statutory language, the Ostroushkos "did by force or threat. of force willfully injure, intimidate, and interfere with, and attempt to injure, intimidate, and interfere with the rights of another, because she was and had been participating in or enjoying a benefit, service, privilege, program, facility, and activity provided or administered by the United States, which did result in bodily injury[.]" (ECF Doc. 1 at 1.)

As argued in greater detail in the Ostroushkos' other pretrial motions, the accusation in Count 1 is so vague that it fails to state an offense. Crucially, the language in the indictment simply parrots the language in the statute, making no attempt to identify the "benefit, service, privilege, program, facility, and activity provided or administered by the United States" at issue in the case.

This is no minor failing. Under applicable law, the requirement that the conduct be done "willfully" requires that the specific "benefit, service, privilege, program, facility, and activity provided or administered by the United States" be the ***purpose***

of the use or threat of force. *See* 18 U.S.C. § 245(b)(1)(B); see also United States v. Sandstrom, 594 F.3d 634, 654 (8th Cir. 2010) (discussing the elements of the parallel § 245(b)(2)(B) offense); 8th Cir. Model Rule 6.18.242 (discussing "willfully" in § 242 offenses). In short, the grand jury here had to decide whether there was probable cause to believe that the use or threat of force was directed toward the unspecified person ***because*** she was using the benefit, etc., provided or administered by the United States. How could they have done that without knowing what the benefit, etc., even was?

The grand jury's role is to determine if there is probable cause for each defendant on each element of each offense. Through the exercise of this duty, the grand jury serves historic functions that pre-date even the Fifth Amendment, including "both the determination whether there is probable cause to believe a crime has been committed and the protection of citizens against unfounded criminal prosecutions." *United States v. Calandra*, 414 U.S. 338, 343 (1974); *United States v. Allen*, 406 F.3d 940, 946 (8th Cir. 2005). The grand jury serves a "vital" role as "a check on prosecutorial power." *United States v. Cotton*, 535 U.S. 625, 634 (2002). But the grand jury cannot fulfill its duty if it is misled or misinformed.

The task of making sure the grand jury is not misled or misinformed falls to the prosecutor, who serves as the legal advisor to the grand jury. *See United States v. Navarro-Vargas*, 408 F.3d 1184, 1207 (9th Cir. 2005) (citing authorities explaining that a government attorney is "by law … the only legal advisor to the grand jury"); *United States v. Ciambrone,* 601 F.2d 616, 622 (2d Cir. 1979) (noting that grand

jurors "must lean heavily upon the United States Attorney as its investigator and legal advisor to present to it such evidence as it needs for its performance of its function and to furnish it with controlling legal principles.").

The grand jury, with no special legal training, must rely on the prosecutor to tell it what the law is and explain how the law applies, or does not apply, to the facts. *United States v. Filer*, 762 F. Supp. 3d 730, 756 (N.D. Ill. 2025) ("[P]rosecutors are the legal advisors to the grand jury. And as the legal advisors, the prosecutors 'inform[ ] the jurors about the relevant law and explain[ ] how it applies – or does not apply – to the available evidence.') (quoting 1 Susan W. Brenner & Lori E. Shaw, Federal Grand Jury: A Guide to Law and Practice § 6:2 (2d ed. 2006)), *appeal dismissed*, No. 25-1079, 2025 WL 1952087 (7th Cir. Jan. 19, 2025); *see also United States v. Briggs*, 514 F.2d 794, 803 (5th Cir. 1975) ("Failure of the grand jury to perform its shielding function where appropriate may be explained by the tendency of the body, with its members not learned in the law, to follow the lead of the prosecutor, who is its legal advisor."); *United States v. Wahib*, 578 F. Supp. 3d 951, 957 (N.D. Ohio 2022) ("As a legal advisor to the grand jury, the prosecutor must give the grand jury sufficient information concerning the relevant law to enable it intelligently to decide whether a crime has been committed.") (internal quotation and citation omitted); *United States v. Twersky*, No. S2 92 CR. 1082 (SWK), 1994 WL 319367, at *4 (S.D.N.Y. June 29, 1994) (same).

If the prosecutor fundamentally misrepresents or distorts the law—either out of ignorance of the law, or with intent to obtain an indictment based on what that

prosecutor *wants* the law to be, rather than what it *is*—he or she wholly undermines the independence of the grand jury that is the fundamental promise of the Fifth Amendment. *See United States v. Samango*, 607 F.2d 877, 882 (9th Cir. 1979) ("[A] line must be drawn beyond which a prosecutor's control over a cooperative grand jury may not extend … [P]rosecutorial behavior, even if unintentional, can also cause improper influence and usurpation of the grand jury's role."); *United States v. Heffington*, 682 F.2d 1075, 1080 (5th Cir. 1982) ("The role of a prosecutor is to direct the grand jury in its investigation, but to avoid taking control of such inquiry."); American Bar Association, Criminal Justice Standards for the Prosecution Function (4th Ed. 2017) at 3-4.5 (noting that, "[w]here the prosecutor is authorized to act as a legal advisor to the grand jury, the prosecutor should appropriately explain the law").

Indeed, similar conclusions were reached by another federal court in similar circumstances. *See United States v. Comey*, -- F. Supp. 3d ---, 2025 WL 3202693, at *12 (E.D. Va. Nov. 17, 2025). That case involved "statements by the prosecutor to the grand jurors that on their face appear to be fundamental misstatements of the law that could compromise the integrity of the grand jury process" led directly to his unlawful indictment in this case *Id.* at *7.

As that court concluded, when the government may have misstated the law to the grand jury and thereby allowed corruption of the probable-cause assessment, the defense is entitled to examine what was said and how the law was presented. There are numerous concrete, non-speculative reasons to believe that the government

provided the grand jury with profoundly misleading legal instruction, risking an indictment obtained through infringement on the grand jury's independence such that it violates the Fifth Amendment and provides grounds for dismissal. *See, e.g., Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988) (explaining that dismissal is appropriate if a defendant establishes that misconduct before the grand jury "substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations.") (internal quotations and citations omitted); *United States v. Hogan*, 712 F.2d 757, 762 (2d Cir. 1983) ("Taking advantage of his special position of trust, the AUSA impaired the grand jury's integrity as an independent body"); *see also United States v. Lopez-Gutierrez*, 83 F.3d 1235, 1245 (10th Cir. 1996) (holding that although technical errors affecting probable cause are insufficient to dismiss an indictment, errors grave enough to "essentially threaten[] the defendant's rights to fundamental fairness" may serve as a basis for dismissal).

The government has charged a narrow, complex statute in Count 1. However, the language in the indictment itself raises significant questions about whether the government fully understood or respected the limited legal reach of this statute. The failure to properly clarify the elements of the offense it charged makes it extremely likely that prosecutors provided fundamentally inaccurate legal instruction to the grand jury. Although courts rarely concern themselves with minor instructional errors in the grand jury—because it is rare for such errors to affect probable cause, much less fundamental fairness—significant, improper instruction, such as appears

to have been given here, infringes on the grand jury's independence and provides grounds for dismissal.

The government is not entitled to the presumption of regularity that routinely applies to the U.S. Attorney's Office. "Generations of presidential administrations and public officials have validated this underlying premise of the presumption of regularity," "[i]n just six months, the President of the United States may have forfeited the right to such a presumption" entirely. *Fed. Educ. Ass'n v. Trump*, 795 F. Supp. 3d 74, 90–92 (D.D.C. 2025). As documented in more detail in the Ostroushkos' vindictive-prosecution motion, the administration has been laser focused on weaponizing the law against its opponents. Here, standard-issue misdemeanor assault charges have been twisted into a felony civil-rights charge carrying a potential ten-year prison sentence.

A recent prosecution in Chicago recently demonstrated how, as a result of administration pressure to bring trumped-up charges against protesters, the so-called Broadview Six, U.S. Attorney's Offices have taken shortcuts to bring charges. *See* Defendant's Motion and Application for Attorneys' Fees and Litigation Expenses Pursuant to the "Hyde Amendment," 18 U.S.C. § 3006A., *United States v. Rabbitt, et al.*, 1:25-CR-693 (N.D. Ill. June 2, 2026), ECF Doc. 201 at 3–12 (summarizing what is known so far about the outrageous prosecutorial misconduct in grand jury proceedings that led the government to dismiss the charges with prejudice). In that case, the prosecutors engaged in improper vouching before the grand jury, and excused jurors who did not believe that the case should be brought. (*See id*. at 3–4.)

When required to provide transcripts of grand jury proceedings for *in camera* review, the U.S. Attorney's Office provided transcripts that redacted the misconduct. (*See id*. at 7.) Those redactions were hidden from the district court, and when the government finally provided the unredacted version, Judge April Perry (a former Assistant U.S. Attorney) commented that, "I was incredibly shocked by the redactions that were made. . . . I have never seen the types of prosecutorial behavior before a grand jury that I saw in those transcripts." (*See id*. at 10 (quoting the hearing transcript).) Judge Perry noted that, in addition to the improper vouching, the improper communications with grand jurors, and excusing grand jurors for opposing the indictment, she was most troubled by how the U.S. Attorney's Office had redacted that misconduct and hidden it from her, saying, "I do believe deeply in the presumption of regularity and that most government attorneys are doing the best they can to do the right thing. That trust has been broken." (*See id*. at 11 (quoting the hearing transcript).)

Without the transcript of the legal instruction and colloquy, neither the defendants nor the Court can determine the extent of any instructional error here. The defendants need not, at this stage, prove that they would *certainly* prevail in a motion to dismiss—only that grounds "*may exist*" to challenge the indictment based on the suspected error. *See* Fed. R. Crim. P. 6(e)(3)(E)(ii). But the way Count 1 is written, without any specific facts describing Under these circumstances, justice demands that the defendants be allowed to pierce the veil of grand jury secrecy to determine whether the instructional errors in fact occurred.

## CONCLUSION

For all these reasons, the Ostroushkos respectfully ask this Court to direct the government to immediately disclose the requested grand jury material. Should this Court have any lingering concern about release of these materials, those concerns can be addressed through the use of a protective order or review of the materials *in camera*. In accord with L.R. 12.1, counsel for Christopher Ostroushko conferred by telephone with Special Assistant U.S. Attorney Nicholas Grey before filing this motion.

Dated: September 27, 2026

Respectfully submitted,

S/ Thomas H. Shiah
Thomas H. Shiah #100365
331 Second Ave South, Ste 705
Minneapolis, MN 55401
(612) 338-0066

Attorney for Defendant
Christopher Ostroushko

/s/ Amy Slusser Conners
Amy Slusser Conners #387375
BEST & FLANAGAN
60 South 6th Street
Suite 2700
Minneapolis, MN 55402
612-339-7121
Email: aconners@bestlaw.com

Attorney for Defendant
Paige Ostroushko

/s/ Kevin C. Riach
Kevin C. Riach #0389277
**RIACH LAW PLLC**
125 Main St. SE, Suite 339
Minneapolis, MN 55412
Telephone: 612.203.8555
kevin@riachdefense.com

Attorney for Defendant
Deyanna Ostroushko