UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 26-86 (NEB/JFD)

UNITED STATES OF AMERICA,

Plaintiff,

v.

(1) CHRISTOPHER JOSIAH OSTROUSHKO,
(2) PAIGE MARIE OSTROUSHKO,
(3) DEYANNA MARIE OSTROUSHKO,

Defendants.

UNITED STATES' RESPONSE TO MOTION TO DISMISS COUNT ONE AS UNCONSTITUTIONAL

The United States of America, by and through its attorneys, Daniel N. Rosen, United States Attorney for the District of Minnesota, and Nicholas Grey, Special Assistant United States Attorneys, submits the following response in opposition to the motion by defendants Christopher Ostroushko and Paige Ostroushko to dismiss Count One as unconstitutional. ECF Doc. 52.

## OVERVIEW

Defendants Christopher Ostroushko and Paige Ostroushko request dismissal of Count One "because § 245(b)(1)(B) is not based in a proper grant of constitutional authority, both facially and as-applied." ECF Doc. 52, 4. This is separate from Defendants' other motion to dismiss Count One made in ECF Doc. 50, and the United States accordingly responds to those separate challenges in a separate response.

18 U.S.C. § 245(b)(1)(B) is facially constitutional. Congress's has express authority over property belonging to the United States. Article IV, § 3, clause 2 empowers Congress to make all needful rules and regulations respecting federal property. Under Article VI, the Laws of the United States shall be the supreme Law of the Land. Congress appropriately enacted 18 U.S.C. § 245(b)(1)(B) to protect individuals from interference and intimidation while they are "enjoying any benefit, service, privilege, program, facility, or activity provided or administered by the United States[.]"

The prosecution for violation of § 18 U.S.C. § 245(b)(1)(B) is constitutional as applied to defendants. The evidence will demonstrate that the Victim was present on the federal property in front of the Whipple building to observe and record a demonstration. Defendant Paige Ostroushko told the Victim she could not be there or film. Paige and Christopher Ostroushko escalated the confrontation when the Victim did not leave, culminating in a series of assaults upon the Victim that eventually drove her away from the federal property where the demonstration was occurring.

## BACKGROUND

### A. Count 1 and the constitutional motion

The indictment charges Christopher Ostroushko and Paige Ostroushko in Count One with violating 18 U.S.C. § 245(b)(1)(B) on or about April 11, 2026. Count One alleges that they, by force or threat of force, willfully injured,

intimidated, and interfered with, and attempted to injure, intimidate, and interfere with the rights of another because she was and had been participating in or enjoying a benefit, service, privilege, program, facility, and activity provided or administered by the United States, resulting in bodily injury. Indictment 1, ECF No. 1.

Counts Two through Four separately charge misdemeanor assaults under 18 U.S.C. §§ 113(a)(5) and 2. Those counts expressly allege that the assaults occurred "within the exterior boundaries of federal property owned by the General Services Administration and Department of Veterans Affairs." Indictment 1–2. Count Two charges Christopher, Count Three charges Paige, and Count Four charges Deyanna Marie Ostroushko. *Id.* at 1–2.

The constitutional motion argues that Count One lacks a proper constitutional source of congressional authority. Defs.' Mot. to Dismiss Count 1 as Unconstitutional, ECF No. 52 ("Constitutional Mot."). It discusses the Elections Clause, the Thirteenth and Fourteenth Amendments, and the Commerce Clause, and requests facial and as-applied dismissal. *Id.* The Court need not address the jurisdictional reach of the Elections Clause, Civil War amendments, or the Commerce Clause as the Property Clause is independently sufficient.

### B. Victim's account and the federal-property record

The Victim's summary of events was recorded by the FBI shortly after the offenses. The FBI's report of Victim's April 13 interview states that she traveled to Minnesota to cover activity at the Whipple building. She planned to conduct "point and shoot" journalism by recording footage and questioning people. She reported wearing a press badge and trying to remain with others marked as press near the gate. After William Kelly identified her affiliation, a crowd formed. The Victim attempted to question members of the crowd about the protest. The report records: "She was being told she could not be there or film." Victim Report 1.

The Victim identified members of the Ostroushko family as participants in the confrontation. She reported that Paige told her she needed to leave and later blew a whistle in her ear. As the crowd continued to press toward her, The Victim attempted to leave and used her hand to make space; she acknowledged that she might have touched Paige in the process of protecting herself. The Victim then described Paige pushing her against a fence, Paige and Deyanna aggressively approaching, and the Victim punching Paige because Paige was blocking her departure. She reported that, after another effort to leave, Christopher pushed her from behind and caused her to fall. Victim Report 2. The report attributes these statements to Victim; it is not itself an independent finding that every reported fact occurred as described.

The property evidence establishes the federal setting of the above events. First, a Hennepin County GIS map titled "Property Map," for Fort Snelling, Minnesota 55111, identifies the United States General Services Administration as owner of the parcel associated with the Whipple building. Hennepin County GIS, Property Map, Fort Snelling, MN 55111 (U.S. General Services Administration parcel) (Ex. 1) ("GSA Property Map"). Second, a separate Hennepin County "Property Map" identifies the United States Department of Veterans Affairs as owner of the adjoining Fort Snelling parcel, including the depicted parking and access areas. Hennepin County GIS, Property Map, Fort Snelling, MN 55111 (U.S. Department of Veterans Affairs parcel) (Ex. 2) ("VA Property Map").

Third, an enlarged Hennepin County "Property Map" of the VA parcel bears two red location marks near the roadway and parking-area edge. Hennepin County GIS, Property Map, Fort Snelling, MN 55111 (U.S. Department of Veterans Affairs parcel, annotated detail) (Ex. 3) ("Annotated VA Property Map").

Fourth, Rani Engineering's five-sheet survey identifies the Whipple Federal Building site, property lines, exception and easement lines, parking and circulation areas, and the gravel lot adjoining the site. Rani Engineering, Inc., Boundary, Topographic, and Utility Survey for U.S. General Services Administration, Bishop Henry Whipple Building, One Federal Drive, Fort

Snelling, Minnesota 55111, sheets 1–5 (May 24, 2010) (Ex. 4) ("Rani Survey"). Sheet 1 specifically labels "OWNERSHIP OF GRAVEL LOT BY UNITED STATES OF AMERICA PER TREATY, 23 JULY 1851," while sheet 3 depicts the parking and access configuration. An accompanying September 28, 2026 email identifies the highlighted survey excerpt as showing that the gravel lot, now paved, has belonged to the United States since before statehood. Email with highlighted Rani Engineering survey excerpt showing United States ownership of gravel lot (now paved) (Sept. 28, 2026, 4:45 p.m.) (Ex. 5) ("Highlighted Survey Email"). The Highlighted Survey Email is explanatory correspondence; the survey itself supplies the underlying boundary and ownership notation.

Lastly, video evidence from numerous sources place the charged encounter at the federal property location depicted in the above surveys. These include video taken by the Victim, by surveillance footage, and by third parties that were separately documenting the demonstration that day. The Government does not rely on an inference that the incident occurred somewhere generally "near" a federal installation. The charged encounter occurred on federal property.

# ARGUMENT

## I. Section 245(b)(1)(B) protects participation in federally provided or administered facilities from purposeful private force.

### *A. The statutory text supplies both the federal interest and the causal limitation.*

Section 245(b) applies to "[w]hoever, whether or not acting under color of law," who "by force or threat of force" willfully injures, intimidates, or interferes with another, or attempts to do so. 18 U.S.C. § 245(b). Subsection (b)(1) requires that the conduct be directed at a person "because he is or has been," or to intimidate a person or class from, specified forms of federal participation. The charged subparagraph covers "participating in or enjoying any benefit, service, privilege, program, facility, or activity provided or administered by the United States." 18 U.S.C. § 245(b)(1)(B).

Those words matter twice. First, the provision expressly reaches private actors; it does not incorporate a state-action requirement, in contrast to 18 U.S.C. § 242. Second, the federal nexus is an element, not a venue fact. The Government must identify a federally provided or administered subject and prove the victim's participation in or enjoyment of it. The Second Circuit accordingly described the victim's enjoyment of or participation in the protected activity as "[a]n essential element" of § 245(b)(1)(B). *United States v. Pimental*, 979 F.2d 282, 286 (2d Cir. 1992). It also held that subsection (b)(1) does not require the discriminatory motive that Congress expressly required in subsection (b)(2). *Id.* at 283–84. The Government therefore need not

transform this case into a race, religion, or political-bias prosecution. The required intent is the intent and causal relationship specified by subsection (b)(1).

The statute also does not require the Government to characterize the Victim's journalism as a federal program. Congress listed "facility" separately from "program" and "activity." The asserted facility here is the exterior federal property and associated parking and access areas at the Whipple/Fort Snelling site. The Victim's reporting explains her use of that facility and supplies evidence relevant to the "because" element; it is not itself a federal service supplied to journalists.

### *B. Price rejects the premise that an assault at a federal facility is either automatically federal or merely incidental.*

The Eighth Circuit's decision in *United States v. Price*, 464 F.2d 1217 (8th Cir. 1972), is particularly instructive. The victim went to Lake Clearwater intending to enjoy governmental recreational facilities. After the defendant blocked his path and beat him, the defendant argued that the altercation would have happened anywhere, that it only incidentally occurred on federal property, and that the evidence did not show an intent to deprive the victim of facility use. *Id.* at 1218. The Eighth Circuit rejected that characterization. It held that, on the evidence presented, the jury could infer that the defendant

intended to intimidate the victim and interfere with his use of the governmental facilities. *Id.*

*Price* therefore cuts against both extremes. Federal location alone was not the statutory theory; the defendant's interference with the victim's use of the governmental facility was. But the court also did not treat the use of private force as beyond § 245 merely because the same conduct could constitute an ordinary assault. The causal element did the work. The same distinction governs here.

### *C. An exterior access or parking area can be a "facility" within the statutory text.*

The statute does not limit "facility" to an interior room or to a service counter. In *United States v. Nelson*, 277 F.3d 164 (2d Cir. 2002), the Second Circuit construed the same word in § 245(b)(2)(B) and held that a city street unambiguously qualifies as a facility because it is constructed to facilitate travel and transportation. *Id.* at 193. *Nelson* involved a state-provided facility and a different subparagraph, so it does not decide this case. Its textual analysis is nonetheless persuasive because Congress used the same noun, "facility," in adjacent provisions.

The federal exterior areas shown in Exhibits 1 through 4 are not an abstract patch of land. The maps and survey depict constructed parking, roadway, gate, and circulation areas associated with the Whipple/Fort Snelling

federal site. Treating those physical areas as facilities is consistent with the statutory language and with *Price*'s treatment of governmental recreational facilities. Whether the jury ultimately finds the required use and causal connection is a merits question; it does not make Congress powerless to protect such a federal facility.

## II. The Property Clause authorizes Congress to protect use of federal property against purposeful private interference.

### *A. Waddell directly links federal land, private violence, and congressional power.*

In *United States v. Waddell*, 112 U.S. 76 (1884), the Supreme Court considered private violence used to drive a homestead claimant from federal land and thereby obstruct a federally created property right. The Court emphasized that the protected interest was "not the mere right of protection against personal violence." *Id.* at 80. It was the federal right being exercised on federal land, and violence purposefully directed at that exercise fell within Congress's constitutional power to protect it. *Id.* at 79–81. The statute and federal interest here are different, but the constitutional principle is directly relevant: Congress may protect an identified federal-property interest against purposeful private force without converting every private altercation into a federal civil-rights offense.

*Waddell* provides a clear constitutional bridge. There, a homestead claimant had entered federal land under federal law and was residing on and

improving it to perfect his claim. Private defendants allegedly used threats and force to drive him from the property and prevent him from completing the federally prescribed process. 112 U.S. at 77–79. The Supreme Court first identified the source of the protected interest: the right being obstructed was "wholly dependent upon the act of congress" governing settlement and sale of federal lands, and Article IV, § 3 expressly vested Congress with power to make rules and regulations respecting federal property. *Id.* at 79.

The Court then distinguished the federal interest from ordinary violence. "The right here guarantied is not the mere right of protection against personal violence." *Id.* at 80. An ordinary quarrel or malicious assault would remain a matter for state law. *Id.* But where the conduct was designed to prevent exercise of the federal land right, or to injure or oppress a person because he had exercised it, the acts fell within both the federal statute and Congress's constitutional power. *Id.* at 80–81.

The Government does not contend that *Waddell* interpreted § 245 or that the Victim possessed a homestead right. Its relevance is constitutional. The Court recognized that Congress's federal-property authority can support legislation protecting an individual from private violence when the violence is directed at an identified federally grounded property interest. Section 245(b)(1)(B) uses the same basic limiting structure in a modern statute: force against an individual falls within Congress's power when the force is directed

because of participation in or enjoyment of a federally provided or administered subject. That is materially different from a free-standing federal assault law.

### *B. Kleppe, Camfield, Light, and San Francisco confirm the breadth of Congress's authority over federal property.*

The Supreme Court has repeatedly described the Property Clause in broad terms. *Kleppe v. New Mexico*, 426 U.S. 529 (1976), explains that Congress may determine what rules are "needful" respecting public lands and that, over the public domain, Congress exercises powers "both of a proprietor and of a legislature." *Id.* at 539–40. It further distinguishes Congress's authority under the Property Clause from exclusive federal legislative jurisdiction: a State may retain criminal and civil jurisdiction over federal lands while Congress "equally surely retains the power to enact legislation respecting those lands." *Id.* at 543.

*Camfield v. United States*, 167 U.S. 518 (1897), likewise recognized federal power over federal property "analogous to the police power of the several states," measured by the needs of the particular case. *Id.* at 525. It upheld Congress's authority to protect public lands even when effective protection required regulation of conduct on adjoining private property. *Id.* at 525–28. *Light v. United States*, 220 U.S. 523 (1911), stated the ownership rule succinctly: "The United States can prohibit absolutely or fix the terms on which its property may be used." *Id.* at 536. And *United States v. City & County of*

*San Francisco*, 310 U.S. 16 (1940), distinguished impermissible general control over state public policy from Congress's "complete power" over particular federal property entrusted to it. *Id.* at 30.

Those cases concern different federal-property regulations, but they establish the relevant constitutional scale. Congress need not stand powerless while private force obstructs the federally defined use of federal property. Protecting persons from purposeful violence directed at their participation in a federal facility is a means plainly adapted to protecting and administering that federal property. See *McCulloch v. Maryland*, 17 U.S. 316 (1819) (recognizing Congress's discretion to employ appropriate means, consistent with the Constitution, to carry enumerated powers into execution).

### C. *Concurrent state jurisdiction does not defeat federal authority.*

Defendants' federalism concerns do not require a choice between state and federal power. Section 245(a)(1) expressly preserves state and local jurisdiction over conduct that also violates state law. And *Kleppe* makes clear that state jurisdiction over federal land can coexist with congressional legislation under the Property Clause. 426 U.S. at 542–43. The fact that the same use of force may also constitute assault therefore does not answer whether Congress may protect the distinct federal facility interest. *Waddell* makes the same point: ordinary personal violence remained within state law,

but private violence directed at the federal land right was within federal legislative power. 112 U.S. at 80–81.

## III. The charged application is tied to federal facility use, not to the Victim's status as a journalist.

### *A. The property record identifies the federal facility and the location of the charged encounter.*

The Government's application is concrete. Exhibit 1 identifies the GSA-owned Whipple parcel. Exhibit 2 identifies the adjoining VA-owned Fort Snelling parcel. Exhibit 3 enlarges the VA parcel and marks the relevant roadside and parking-area location. The video evidence places the charged encounter at that federal-property location. Exhibit 4 supplies the engineering boundary and topographic survey, including property lines, parking and circulation features, and the federal-ownership notation for the gravel lot. Exhibit 5 explains the survey excerpt on which the historical ownership point rests.

This record eliminates ambiguity as to the location of the events. The defendants and the Victim were all on federal property during all relevant conduct. The Government is not inferring federal jurisdiction from the Whipple building's general proximity. It identifies the exterior federal facility and the specific federal property on which the encounter occurred. The remaining statutory question is whether the Victim was participating in or

enjoying that facility and whether defendants used force because of that participation or enjoyment.

### *B. The Victim's account supplies evidence of facility use and the required causal relationship.*

The Victim's account describes an ongoing use of the exterior federal space. She came to the Whipple site to observe events, record footage, and question participants. She remained near the gate with others marked as press. Once identified, she attempted to question the crowd. The report then records statements and conduct directed at removing her or stopping the activity she was undertaking there: she was told that she "could not be there or film," and Paige told her she needed to leave. Victim's Report 1–2.

Those facts are relevant because § 245(b)(1)(B) asks why the force was used. They permit the Government to argue that the confrontation was directed at Victim's contemporaneous use of the federal exterior facility, rather than at an unrelated personal dispute that fortuitously occurred on federal land. That is the distinction *Price* treated as a jury question. 464 F.2d at 1218. The Government will bear the burden of proving that causal connection.

### *C. The Court need not recognize a special press-access right.*

The Government's theory does not depend on a constitutional privilege held by journalists. The Victim's reporting activity matters for a narrower reason: it explains the way she was using the exterior federal facility and the

alleged reason defendants sought to stop her from using the facility. The statutory protected subject is the federally provided or administered facility; the First Amendment need not supply the constitutional source of congressional power.

## IV. The "mere presence" and § 113 arguments do not describe the Government's construction.

Defendants' separate dismissal memorandum posits that, if mere presence on federal property were itself enough, every assault inside a federal building could satisfy § 245(b)(1)(B), the "because" element would disappear, and § 113 would become superfluous. Defs.' Mem. in Supp. of Mot. to Dismiss Count One 22–24, ECF No. 50 ("Dismissal Mem."). The Government does not advance that construction.

Section 113 and § 245(b)(1)(B) address different things. As defendants themselves describe § 113, the assault counts turn on an assault occurring within federal territorial jurisdiction. Dismissal Mem. 22–23. Section 245(b)(1)(B) requires additional, different proof: a federally provided or administered subject; the victim's participation in or enjoyment of it; force or threat of force; willful injury, intimidation, or interference; and the causal relationship between the force and the protected federal participation. 18 U.S.C. § 245(b)(1)(B). An assault can occur on federal property without being

motivated by or directed at the victim's use of a federal facility. Such a case may implicate § 113 without satisfying § 245.

Conversely, the fact that one course of conduct can satisfy two statutes with different elements does not make either statute superfluous. Here, the indictment itself reflects the distinction. Counts 2 through 4 allege assaults within federal property. Count 1 alleges purposeful interference because the victim was participating in or enjoying a federally provided or administered subject and alleges resulting bodily injury. Indictment 1–2. The Government must prove what Count 1 adds. The separate charges therefore reinforce, rather than erase, the limiting function of the § 245 causal element.

*Price* is again instructive. The Eighth Circuit did not treat the victim's presence at Lake Clearwater as sufficient by itself. It focused on evidence that the defendant intended to prevent the victim and his companions from using the federal recreational facilities. 464 F.2d at 1218. That is the construction the Government advances here. Because the statute is not being read to make location conclusive, defendants' lenity argument against a hypothetical "mere presence" construction does not resolve this application.

## V. The Reconstruction Amendment arguments do not exhaust Congress's sources of authority.

Section 245 contains many separate offenses and might well have been drafted as several different sections. These different subsections have different constitutional underpinnings.

Defendants correctly identify limits on congressional enforcement power under the Fourteenth Amendment. The *Civil Rights Cases* held that the Fourteenth Amendment is directed at state action rather than individual invasions of individual rights. 109 U.S. 3, 11 (1883). *United States v. Morrison* reaffirmed that the Amendment "prohibits only state action," and held that § 5 did not authorize a federal remedy directed at private perpetrators rather than a State or state actor. 529 U.S. 598, 621, 626 (2000). And *United States v. Price*, 383 U.S. 787, 794 (1966), explains when private persons who jointly act with state officials may act under color of law.

But those propositions answer a Fourteenth Amendment question. They do not eliminate an independent constitutional grant of power. *Morrison* itself begins from the premise that every federal law must rest on one or more enumerated powers. 529 U.S. at 607. The relevant enumerated power here is the Property Clause. The absence of state action therefore does not answer whether Congress may protect use of its own property and facilities from purposeful private interference.

Defendants' other § 245 authorities likewise involve different subparagraphs and different constitutional interests. *United States v. Peña*, 768 F. Supp. 3d 1335, 1348–50 (D.N.M. 2025), sustained § 245(b)(1)(A)'s protection of federal elections under the Elections Clause. *United States v. Nelson*, 277 F.3d at 175, sustained an application of § 245(b)(2)(B) under the

Thirteenth Amendment. Those decisions illustrate that Congress's authority for one statutory application need not be the authority supporting another. Count 1 invokes § 245(b)(1)(B) in the setting of a federally owned and administered facility, where the Property Clause supplies the relevant federal power.

## VI. The Commerce Clause cases do not invalidate an application supported by the Property Clause.

The Government does not ask the Court to sustain this prosecution by tracing an assault through an attenuated chain of economic effects. *United States v. Lopez*, 514 U.S. 549, 551 (1995), invalidated a statute that neither regulated commercial activity nor required the prohibited gun possession to be connected to interstate commerce. *United States v. Morrison* rejected regulation of noneconomic violent criminal conduct based solely on its aggregate effect on interstate commerce. 529 U.S. 598, 617–18 (2000). Those decisions define limits on the Commerce Clause. They do not shrink a separate grant of constitutional authority over federal property.

The same is true of defendants' Eighth Circuit commerce cases. *United States v. Arif*, 154 F.4th 592, 598–99 (8th Cir. 2025), and *United States v. Koech*, 992 F.3d 686, 692–93 (8th Cir. 2021), address proof of statutory elements requiring conduct "in or affecting interstate commerce." Their insistence on the commerce nexus required for those statutes does not establish

a commerce element in § 245(b)(1)(B), and it does not displace the Property Clause.

*Kleppe* is especially instructive on the analytical order. There the lower court had rejected a Commerce Clause basis, and the Secretary renewed the commerce argument in the Supreme Court. The Court found no need to reach it because the statute, as applied, was a permissible exercise of the Property Clause. 426 U.S. at 535 n.6. The same approach is available here. If Congress had Property Clause authority to protect the identified federal facility against the charged form of purposeful interference, the Court need not manufacture or decide an alternative Commerce Clause theory.

## VII. Neither the facial nor the as-applied challenge warrants dismissal.

### *A. The facial challenge cannot succeed by ignoring constitutionally valid federal-property applications.*

Section 245(b)(1)(B) reaches a defined class of interference with federal participation. Whatever constitutional source may support other applications involving different federal benefits, services, programs, or activities, the provision plainly has applications to federal-property interests within Congress's Article IV authority. The Property Clause supplies a concrete constitutional basis for applying the provision to purposeful interference with use of a federal facility.

*Kleppe* also counsels against deciding the reach of Property Clause power through remote hypotheticals. After sustaining the federal statute as applied on public lands, the Court stated that it "need not, and do[es] not, decide whether the Property Clause would sustain the Act in all of its conceivable applications." 426 U.S. at 546. It left questions about more attenuated private-land applications for an adequate record. *Id.* at 546–47. Defendants' facial attack similarly provides no basis to invalidate § 245(b)(1)(B) across the board when the charged application concerns federal property itself.

***B. The as-applied challenge fails because this prosecution is anchored to an identified federal facility and federal property.***

As applied here, the federal connection is direct. The indictment charges interference because of participation in or enjoyment of a federally provided or administered subject. The Government identifies the exterior Whipple/Fort Snelling federal facility and its VA/GSA parking and access areas. The property documents establish federal ownership, and the video evidence places the encounter on that federal property. The Victim's statement describes her use of the site and alleged efforts to make her leave or stop filming. Those facts bring the application within the federal-property interest Congress is constitutionally empowered to protect.

That conclusion does not decide the jury's work. The Government still must prove beyond a reasonable doubt the elements Congress placed in §

245(b)(1)(B), including the Victim's participation in or enjoyment of the federal facility, defendants' willful use or threat of force, and the required "because" relationship. *Pimental*, 979 F.2d at 286–87; *Price*, 464 F.2d at 1218. But a dispute over whether the Government can prove those facts is different from a claim that the Constitution denies Congress power to legislate in this federal-property setting.

## CONCLUSION

The Court should deny defendants' motion to dismiss Count One as unconstitutional. The charged application does not rest on a general federal police power, a special constitutional privilege for journalists, or mere presence on federal land. It rests on Congress's Property Clause authority to protect participation in or enjoyment of a federally provided or administered facility from purposeful private force, subject to the statutory elements that distinguish § 245(b)(1)(B) from an ordinary assault.

Dated: October 20, 2026

Respectfully Submitted,

DANIEL N. ROSEN
United States Attorney

*s/ Nicholas R. Grey*
BY: NICHOLAS R. GREY
Special Assistant U.S. Attorney
Attorney ID No. 283780CA